IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT DOLEMBA, | ) | |
| on behalf of plaintiff and | ) | |
| the class defined below, | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 10651 |
| | ) | |
| v. | ) | Judge Wood |
| | ) | Magistrate Judge Valdez |
| FORA FINANCIAL, LLC, and | ) | |
| FORA FINANCIAL HOLDINGS, LLC, | ) | |
| both doing business as "FORA FINANCIAL", | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AGREEMENT**

Plaintiff Scott Dolemba ("Plaintiff" or "Dolemba") on behalf of himself and all others similarly situated, by class counsel, Edelman, Combs, Latturner & Goodwin, LLC, pursuant to Fed. R. Civ. P. 23(b)(3), respectfully submits the following Memorandum in Support of Final Approval of the Class Action Settlement Agreement with Defendants Fora Financial, LLC and Fora Financial Holdings, LLC (collectively, "Defendants"). This Court preliminarily approved the Agreement on December 14, 2017. (*Dkt. No. 53*)

CLASS NOTICE AND CLAIMS SUMMARY

Following the Court's Order preliminarily approving the settlement in this matter, notice of the settlement was sent by U.S. Mail and email to the Settlement Class Members. Specifically, the Class Notice and Claim Form were sent by the Settlement Class Administrator, Class-Settlement.com ("Class-Settlement.com"), by U.S. Mail to 40,045 of the total 47,385 class members identified by Defendants. Of the 40,045 Notices mailed, 3,879 were returned as undeliverable and unable to be re-mailed. Email addresses were ascertained for 564 of the 3,879

1

of the Settlement Class Members whose mailed notice was unable to be re-mailed. Notice was successfully sent by email to 397 of the 564 Class Members.

There were 7,340 Class Members whose mailing address was not provided by Defendants and could not otherwise be ascertained. Defendants provided email addresses for 6,992 of the 7,340 Class Members who did not have identifiable mailing addresses. Of the 6,992 Notices emailed, 1,326 were returned as undeliverable. There were 348 Class Members for which the Defendants' records were incomplete and mailing addresses or email addresses were not ascertained. In sum, the notice was successfully sent to 89% of the Settlement Class Members. (*See* Appendix A, Declaration of Dorothy Sue Merryman)

Each cell phone number on the Class List was assigned a unique user ID and password that was printed on each notice. Utilizing the Class List provided by Defendants, Class-Settlement.com verified claims submitted by matching the cell phone number(s) provided by the Settlement Class Members to cell phone numbers on the Class List. Class-Settlement.com also determined the number of calls associated with each unique cell phone number on the Class List. In sum, 3,287 timely and valid claims were submitted representing 33,039 calls. There were 36 valid claims that were submitted after the March 26, 2018 claims deadline representing 456 calls. Plaintiff respectfully requests that the 36 late claims be allowed.

**No** objections have been filed or received by the Settlement Administrator or Class Counsel. There have been **two** requests for exclusion. (*Dkt. Nos. 56-57*)

I.  **OVERVIEW OF THE LITIGATION PRECEDING SETTLEMENT.**

Plaintiff filed his original complaint in this matter on November 16, 2016, against Defendants alleging that they violated the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") and Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA") by causing two or more

autodialed calls to be placed to the cell phones of plaintiff and a nationwide class of individuals and entities. Defendants deny that they violated the TCPA and ICFA, but have agreed to settle to avoid the costs and uncertainties of litigation.

Thereafter, the parties undertook informal discovery which lead to extensive settlement discussions. Plaintiff and the Defendants entered into the Settlement Agreement, reached at arm's-length and in good faith. This Court preliminarily approved the Class Settlement in an order dated December 14, 2017 (the "Preliminary Approval Order"). (*Dkt. No. 53*)

As demonstrated below, the Settlement Agreement is now ripe for this Court's consideration and final approval.

## II.     THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT.

### A.     The Preliminary Approval Order.

On December 14, 2017, this Court entered an order (the "Order") granting preliminary approval of the Settlement Agreement and certifying the following class for settlement purposes:

> All persons who on or after February 6, 2016, were called two or more times by or on behalf of Defendants Fora Financial, LLC and Fora Financial Holdings, LLC on their cell phone using an automated dialer or a prerecorded or artificial voice.

In the Order, the Court specifically found that the proposed terms of the Agreement satisfy all of the elements of Federal Rules of Civil Procedure 23(a) and 23(b)(3). The Order further established a procedural framework for the final approval of the Agreement. Specifically, the Order required that Notices of Settlement be sent to the Settlement Class Members; set deadlines and procedures for requests for exclusion, and objections to the Settlement; and set a May 15, 2018, final approval hearing.

### B. The Class Notice.

Subsequent to the entry of the Preliminary Approval Order, on December 14, 2017, Defendants' counsel provided the Settlement Administrator, Class-Settlement.com, with the Class List, containing 47,385 unique cell phone numbers, including the number of calls to each cell phone number. (Appendix A, Affidavit of Dorothy Sue Merry Merryman) Class-Settlement.com thereafter performed a reverse-search on any cell phone number on the Class List to determine if a mailing address could be ascertained. In sum, complete mailing addresses were either provided by Defendants or ascertained for 40,045 cell phone numbers on the Class List. All addresses were run through the National Change of Address database prior to being mailed.

There were 7,340 cell phone numbers on the Class List for which no mailing address was provided or could be ascertained. Of those 7,340 records, Defendants provided email addresses for 6,992 Settlement Class Members. There were 348 Settlement Class Members for whom Defendants records were incomplete and mailing addresses and email addresses could not be ascertained.

The Class Notice and Claim Form approved by the Court was mailed to 40,045 Settlement Class Members. Of the 40,045 notices sent by mail, 4,995 were returned by the U.S. Postal Service. Of the 4,995 returned, 1,116 contained forwarding address information and were re-mailed. The remaining 3,879 notices were marked as undeliverable and were not re-mailed. A total of 36,166 notices were successfully sent by U.S. Mail.

Class-Settlement.com determined that there were email addresses were ascertained for 564 of the 3,879 notices that were undeliverable by U.S. Mail. Notice was successfully sent by email to 397 of the 564.

The Class Notice and Claim Form approved by the Court was emailed to 6,992 Settlement Class Members. Of the 6,992 notices sent by email, 1,326 bounced back as undeliverable.

In total, Class-Settlement.com was able to successfully deliver notice to 42,229 of the 47,385 Settlement Class Members.

Class-Settlement.com created a website that allowed for electronic submission of claim forms. The website, www.class-settlement.com/forafinancial, also posted the Class Notice, Claim Form, Preliminary Approval Order and Settlement Agreement, excluding exhibits.

In addition, Settlement Class Counsel posted the Class Notice and Settlement Agreement, without exhibits, on their firm's website, www.edcombs.com. (Appendix B, Affidavit of John Pasquali)

Two class members have sought to opt-out or exclude themselves from the Settlement Class. (*Dkt. Nos. 56-57*) There were no objections to the settlement.

**C.** **The Value of the Agreement.**

Plaintiff and Defendants entered into a class action Settlement Agreement. Specifically, the Agreement provides:

      1.      Settlement Fund. Subject to Court approval, Defendant agrees to pay the sum of $500,000.00 to a settlement fund (the "Settlement Fund"). The entire fund will be paid out and there will be no reversion to Defendants and their insurer, Certain Underwriters at Lloyd's of London. All costs of notice and administration expenses, which shall not exceed $89,000.00, will be paid from the Settlement Fund. The Settlement Fund less these amounts constitute the Net Settlement Fund. After notice and administration expenses are deducted from the Settlement Fund, the Net Settlement Fund shall be distributed as follows:

5

    (a)    Payment of $10,000.00 to Plaintiff Dolemba as an incentive award for his services as a class representative, in addition to his recovery as a class member.

    (b)    Payment of attorney's fees in the amount of $137,000.00, which represents one-third of the Settlement Fund to Plaintiff's Counsel Edelman, Combs, Latturner & Goodwin, LLC, less notice and administrative expenses. (*Dkt. No. 55*)

    (c)    Each member of the Settlement Class who submits a valid claim form will receive a check for a pro rata distributions of the Net Settlement Fund per unique cell phone number and for each phone call that was placed by or on behalf of Defendants. ("Initial Settlement Distribution") The expected recovery per call and per unique cell phone number is approximately $8.00. [1]

    (d)    After the distributions above, if there is sufficient money remaining in the Net Settlement Fund to pay each Settlement Class Member who cashed his/her/its Initial Settlement Payment a minimum of $10.00 each, then there shall be a Second Distribution to the Settlement Class Members. ("Second Distribution")

If there is not sufficient money remaining in the Net Settlement Fund to make a Second Distribution, any remaining funds will be distributed to one or more *cy pres* charities, selected by the parties, subject to court approval. If a Second Distribution is made and there remain any un-negotiated checks by the void date, the amount of the un-negotiated checks shall likewise be distributed on a *cy pres* basis to an eligible organization(s) to be selected by the parties for approval by the Court. Pursuant to the Agreement, no portion of the money paid by Defendants and their insurer, Certain Underwriters at Lloyd's of London shall revert to either of them.

    2.    <u>Unclaimed or Undistributed Settlement Funds</u>. If the Court allows the proposed payments set forth above, including the incentive award to Plaintiff and the attorney's fees and costs requested by Settlement Class Counsel, the only funds that would remain in the Settlement Fund are those that may result from Settlement Class Members' failure to timely

---

[1] If late claims are allowed, the expected recovery per call and per unique cell phone number would be $7.88.

negotiate their settlement checks. Additional *de minimis* funds may also remain in the Net Settlement Fund following the payments set out in subparagraphs (a) and (c) of paragraph 1, above, that may not be equally divisible among the valid claimants. The parties intend, subject to Court approval, that all amounts resulting from uncashed checks or funds that could not otherwise be distributed, shall be distributed as a *cy pres* award to an organization(s) to be recommended by the parties and approved by the Court. The payment to the *cy pres* recipient will occur no earlier than 45 days following the last void date of the Settlement Class Members' settlement checks.

"The usual recipient of cy pres money is a charity, and the money is supposed to be used, to the extent feasible, for the benefit of the victims of the defendant's wrongdoing." *S.E.C. v. Custable*, 15-1442, 2015 WL 4529304, at *3 (7th Cir. July 28, 2015)(internal citation omitted). Plaintiff proposes EPIC as a *cy pres* recipient.

The Electronic Privacy Information Center ("EPIC") is a 501(c)(3) non-profit organization. According to its website, www.epic.org, "EPIC works to protect privacy, freedom of expression, democratic values, and to promote the Public Voice in decisions concerning the future of the Internet." In addition, EPIC is a leading advocate for consumers concerning privacy matters, including the TCPA. (Appendix C)

      3.    <u>Attorney's Fees and Costs</u>. Settlement Class Counsel requests attorney's fees in the amount of $137,000.00, which is one-third of the Settlement Fund ($500,000.00) less notice and administrative expenses ($89,000.00). Settlement Class Counsel has separately filed a Fee Petition requesting $137,000.00. (*Dkt No. 55*)

    **D.**    **<u>No Objections Were Received</u>.**

Neither Plaintiff's counsel nor counsel for Defendants received any objection to the proposed Settlement. Two class members requested exclusion from the settlement: Sure Me, LLC

and Yohana Perdomo (*Dkt. Nos. 56-57*). These numbers should be viewed as an endorsement of the Agreement by the Settlement Class.

      **E.**    **Status of Compliance with CAFA.**

As set forth in the Declaration of Lewis S. Wiener, Defendants have ensured compliance with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b). (*Dkt No. 54*). The necessary CAFA Notices have been provided to all necessary parties. *Id*. As of the filing of this motion, no objections have been received from any State Attorney Generals nor from the US Attorney General.

**III.**    **THE COURT SHOULD GRANT FINAL APPROVAL TO THE AGREEMENT**

The Agreement satisfies all of the requirements of Rule 23 and should be approved.

      **A.**    **Rule 23(a)(1) - The Class Is So Numerous That Joinder Of All Members Is Impracticable.**

The Settlement Class consists of over 47,385 unique cell phone numbers belonging to persons and/or entities. The United States Court of Appeals for the Seventh Circuit has recognized that as few as 40 class members are sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1). *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969); *see also, Newberg on Class Actions*, 3rd ed. Sec. 3.05, pp. 3-25 ("The difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."). The number of Settlement Class Members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

### B. Rule 23(a)(2) - The Claims Of The Class Arise From Common Questions Of Law And Fact.

The "commonality" requirement of Rule 23(a)(2) is generally satisfied where the class members' claims arise from a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). Rule 23(a)(2) requires only that the class members share at least one question of fact or law in common. *Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594, 599 (S.D.Fla. 1991) (the issue of commonality "turns on whether there exists at least one issue affecting all or a significant number of proposed class members").

In the present case, the claim arose from common questions: Whether Defendants engaged in a pattern of placing allegedly unlawful telemarketing calls to cell phones; Whether Defendants used an autodialer or prerecorded or artificial voice message; The manner in which Defendants compiled or obtained their list of cell phones; and Whether Defendants violated the TCPA and ICFA. These common questions satisfy Rule 23(a)(2).

### C. Rule 23(a)(3) - Named Plaintiff's Claims are Typical Of the Claims Of The Settlement Class Members.

The "typicality" requirement of Rule 23(a)(3) may be satisfied for many of the same reasons as the "commonality" requirement of Rule 23(a)(3). *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1993)("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"); *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)(the typicality requirement is satisfied where the "claims or defenses of the class and the class representative arise from the same event or practice and are based upon the same legal theory").

In the present case, typicality is inherent in the class definition. By definition, the members of the class were subjected to the same practices as the plaintiff, and thus suffered the same alleged violation of the TCPA.

### D. Rule 23(a)(4) - Plaintiff and Class Counsel Have Fairly And Adequately Protected The Interests Of The Class.

The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involves two considerations: (1) whether the Plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the Plaintiff has any interests antagonistic to the class. *General Tel. Co. v. Falcon*, 102 S.Ct. 2364, 2370, n.13 (1982); *Retired Chicago Policy Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

As set forth in the Declaration of Daniel A. Edelman (Appendix D), Plaintiff's counsel is experienced in class action litigation. In addition, Plaintiff does not have any interest in conflict with the Settlement Class Members. Therefore, the named Plaintiff and Settlement Class Counsel satisfy the adequacy of representation requirement of Rule 23(a)(4).

### E. The Class Is Appropriate Pursuant to Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) where: (1) common questions of law or fact predominate over individual questions and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy. Because the claims at issue address the alleged practice of Defendants in placing allegedly unlawful prerecorded telemarketing calls to cell phones using an autodialer or prerecorded or artificial voice, there are no individual issues and common questions predominate. A class action presents a superior method to fairly and efficiently adjudicate all claims of the Class in this case, within the meaning of Rule 23(b)(3). The Agreement provides Settlement Class Members with an opportunity to obtain a portion of the

statutory damages provided for by the TCPA without the filing of numerous individual and identical lawsuits.

### F. Plaintiff Has Met The Standard For Granting Final Approval To The Class Action Settlement.

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591 (1997), the United States Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621, 117 S.Ct. at 2248. Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable, and adequate. *General Electric Capital Corporation v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997). The Court should weigh the following six factors in making this determination:

1. The strength of the plaintiff's case on the merits measured against the terms of the settlement;
2. The complexity, length, and expense of continued litigation;
3. The amount of opposition to the settlement among class members;
4. The presence of collusion in gaining a settlement;
5. The stage of the proceedings; and
6. The amount of discovery completed.

*Id*. (citing *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985)).

The proposed Class Settlement in this case satisfies each of the factors outlined in *GE Capital*. Plaintiff believes that he had a strong chance of prevailing if this case had gone to trial. Defendants dispute Plaintiff's claims and believe they have strong defenses to Plaintiff's claims and to class certification. Regardless of Defendants' potential defenses, the Defendants' financial condition was an extremely important factor in terms of resolving this case. Plaintiff's counsel

reviewed and evaluated Defendants' financial statements and sought additional explanation from Defendants' counsel regarding specific risk factors affecting the Defendants' finances and considered all of the information provided in arriving at a settlement amount that would most effectively compensate the class considering Defendants' financial condition. Defendants' financials demonstrate that they could not satisfy a judgment anywhere near the theoretical liability amount of $47 million (47,385 x 2 = 94,770) (94,770 x $500 = $47,385,000). Because the defendants' ability to pay was a major factor in the parties' settlement negotiations, Defendants are willing to produce their financials to the court for an in-camera review upon request.

Plaintiffs' counsel also reviewed defendants' insurance policies issued by Certain Underwriters of Lloyd's of London. Plaintiff believed there was coverage under one policy, the Private Company Management Liability Coverage Section. That policy has a $500,000 coverage limit with a $250,000 retention. Accordingly, Plaintiff and Defendants (with the consent of Certain Underwriters of Lloyd's of London) negotiated a comprehensive settlement that confers the maximum possible economic relief to all class members.

The strength of the claims asserted in this matter must be considered in light of Defendants' ability to pay. A judgment that is uncollectible is of no value to a plaintiff, his class or his counsel. In consideration of the foregoing financial realities and the arguable strength of the Class's claims the terms of the proposed Settlement are favorable, as more fully set forth above, satisfying the first of the *GE Capital* factors.

In addition, the proposed Settlement is warranted by the complexity, length, uncertainty and expense of continued litigation, satisfying the second *GE Capital* factor. The proposed Settlement easily satisfies the third *GE Capital* factor because only two of the Settlement Class Members have elected to exclude themselves from the proposed Settlement and none of the Class

Members objected to the proposed Settlement. There is no evidence of any collusion among the parties in reaching the proposed Settlement. Each Settlement Class Member will receive a recovery of approximately $8.00 per call. On average, the Settlement Class Members' recovery will be approximately $80.00. There was a substantial risk that any judgment entered in this case would be uncollectible. To the contrary, the above-described payment amounts to Plaintiff and Class Counsel compare favorably to the direct benefits to the Settlement Class, thereby satisfying the fourth *GE Capital* factor.

Finally, the fifth and sixth *GE Capital* factors also support the final approval of the proposed Settlement in light of the stage of pre-trial proceedings and the discovery completed to date. The parties reviewed extensive documentation and engaged in protracted negotiations, in an attempt to resolve this case. *Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560 (N.D. Ill. 2011)(the pertinent inquiry is not whether formal discovery has occurred but rather what facts and information have been provided). Defendants also filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). (*Dkt. No. 31*) Given the stage of proceedings, the investigation and the discovery completed, the proposed Settlement satisfies the fifth and sixth *GE Capital* factors.

## V. CONCLUSION.

For all of the reasons set forth above, Plaintiff individually, and as representative of the Settlement Class of similarly situated persons, by Class Counsel, requests this Court grant final approval of the Agreement and enter an order in the form attached as Appendix E.

Respectfully submitted,

/s/ Heather Kolbus
Heather Kolbus

Daniel A. Edelman
Cathleen M. Combs

Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

## **CERTIFICATE OF SERVICE**

      I, Heather Kolbus, certify that on April 27, 2018, I caused a true and accurate copy of the foregoing document to be filed via the court's CM/ECF system which caused notice via email to be sent to the following:

Michael L. Brooks mbrooks@boodlaw.com
Boodell & Domanskis
One N. Franklin Street, Suite 1200
Chicago, IL 60606

Lewis S. Wiener lewis.wiener@eversheds-sutherland.com
Eversheds Sutherland (US) LLP
700 Sixth Street NW, Suite 700
Washington, DC 20001

                                                s/ Heather Kolbus
                                                Heather Kolbus

Daniel A. Edelman
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)